Notoro et ux., Appellants, v.
I. G. Hyer Estate.

Argued November 19, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Bernard J. Hessley*, for appellants.

*Frank G. McKnight*, for appellee.

Opinion by Cercone, J., March 29, 1976:

Before us is an appeal from an order of the court below granting the defendant's motion for judgment on the pleadings in an ejectment action. The sole issue is what effect if any a judgment rendered in a previous action between these parties has upon their instant litigation. The relevant facts may be summarized as follows.

On December 21, 1955, the plaintiffs, Tony and Norma Notoro (appellants herein), acquired title to 165 acres of land located in Clarendon, Warren County, Pennsylvania. Title was conveyed by a quitclaim deed from the heirs of one C. R. Elston.[1] Included among this 165 acres is a lot measuring 30 feet by 170 feet and upon which a house known as 15 Brown Avenue was erected. Ownership of this portion of the 165 acres is the subject of the instant litigation.

Prior to his death in early 1955, Dr. I. G. Hyer, whose estate is the defendant-appellee herein, was entrusted with managing the affairs of the estate of C. R. Elston for the benefit of the Elston heirs of the third and

---

1. The description in the quitclaim deed is the exact description found in the deed by which C. R. Elston acquired title to the property ·in 1838.

fourth generation. Dr. Hyer functioned in a fiduciary capacity toward the Elston heirs. In 1920, Dr. Hyer and two associates organized the Clarendon Improvement Company. These three individuals purchased homes in an abandoned lumber town, dismantled the houses, and then transported the lumber to Clarendon where they constructed several homes. One of the homes was erected on the property now known as 15 Brown Avenue. However, no deed exists conveying the property at 15 Brown Avenue out of the Elston heirs or into Dr. Hyer. Nevertheless, Dr. Hyer rented out the house at 15 Brown Avenue for approximately 25 years, and never made any accounting to the Elston heirs for the rents he received.

Following Dr. Hyer's death, his executor filed a final account which included, among net assets and balance for distribution, the property known as 15 Brown Avenue. The Notoros responded by filing a claim against the estate for rents collected on the subject property for 25 years, at the rate of $20.00 per month or a total of $6,000.00. The executor of Dr. Hyer's estate denied liability and the Notoros instituted suit in the Orphans' Court Division of the Court of Common Pleas of Warren County.[2] By opinion dated August 22, 1969, the Honorable Alexander C. FLICK, JR. denied the Notoros' claim. No appeal was taken from that decision. On December 12, 1969, however, the Notoros filed a complaint in ejectment[3] against the estate of Dr. Hyer. In this second action the Notoros sought to recover possession of the premises known as 15 Brown Avenue together with a decree that title thereto was vested in them. At the close of the pleadings the defendant-estate moved for judgment on the pleadings contending, *inter alia*, that Judge FLICK'S decision in the first action was res judicata as to this second ejectment action. On January 13, 1975, the Honorable Robert L. WOLFE,

---

2. This suit will hereinafter be referred to as the first action.
3. Hereinafter referred to as the second action.

President Judge of the Court of Common Pleas of Warren County concluded that Judge FLICK'S decision in the first action was in fact res judicata as to this second action. From the denial of the Notoros' exceptions to Judge WOLFE'S opinion, the instant appeal followed.

"Res judicata literally means a matter adjudged or a thing judicially acted upon or decided. From long usage it has come to encompass generally the effect of one judgment upon a subsequent trial or proceeding. Two quite distinct aspects are included: first, the effect of a judgment in a subsequent action between the parties based upon *the same cause of action;* second, the effect on the parties in a trial on *a different cause of action."* *McCarthy v. Township of McCandless,* 7 Pa. Commonwealth Ct. 611, 615-616 (1973), (footnote omitted; emphasis in original); Accord: *Martin v. Poole,* 232 Pa. Superior Ct. 263, 268 (1975). The former effect is commonly referred to as simply "res judicata"; the latter effect is termed "collateral estoppel." *Martin v. Poole,* supra.

The doctrine of res judicata is inapplicable unless four conditions coalesce: "(1) Identity in the thing sued upon or for; (2) Identity of the cause of action; (3) Identity of persons and parties to the action; and (4) Identity of the quality or capacity of the parties suing or sued. *Stevenson v. Silverman,* 417 Pa. 187, 190, 208 A.2d 786, 787-788 (1965), cert. denied, 382 U.S. 833 (1965)." *Martin v. Poole,* supra at 268. "The essential inquiry is whether the ultimate and controlling issues have been decided in a prior proceeding in which the present parties had an opportunity to appear and assert their rights. *Hochman v. Mortgage Finance Corp.,* 289 Pa. 260, 137 Atl. 252 (1927)." *Callery et al. v. Blythe Twp. Mun. Auth.,* 432 Pa. 307, 312 (1968). Instantly, we are constrained to conclude that identity of the thing sued upon or for is lacking as is balance of identity in the causes of action and, most importantly, that the controlling issue of ownership was not determined in the first action.

The first action was in Orphans' Court on exceptions to an account alleging fraud on the part of Dr. Hyer, whereas the present suit is an action at law for ejectment seeking possession of the property. In the first action the court was requested to determine the validity of a claim filed against the account of the appellee-estate. The appellants' claim stated that it was "for rents collected on premises known as No. 15 Brown Avenue, Clarendon Borough, Pennsylvania, as follows: 25 years rent - $20 per month—$6,000." It was further contended that Dr. Hyer and his estate collected the rents and failed to account for them to the Elston heirs. Thus appellants' claim in the first action was predicated not upon ownership of the subject premises, but rather that Dr. Hyer, who was functioning in a fiduciary capacity to the Elston heirs, had perpetrated a fraud in not accounting to the heirs for the rents he collected. That this was the essence of the Notoros' claim is substantiated by Judge FLICK's opinion which states that "[t]he theory on which the claim before the Court is based is that Dr. Hyer violated his fiduciary obligation toward the Elston heirs by erecting a house on land owned by them, treating the house as his own, collecting rentals and keeping said rentals without any accounting therefore to the Elston heirs. The claim is based on this alleged *fraud* committed by Dr. Hyer." (Emphasis supplied.) Judge FLICK then proceeded to hold that the Notoros failed to produce sufficiently clear and convincing evidence of the alleged fraud and thus their claim for rents must be denied and dismissed.

In the instant ejectment action, the lower court held that Judge FLICK's dismissal of the Notoros' claim for rents was res judicata as to their claim of present ownership. This determination by the lower court was based upon its belief that Judge FLICK could not have denied the claim for rents without necessarily concluding that the Notoros did not own the property. We find, however, that Judge FLICK did not decide the ultimate

issue of ownership and, furthermore, that a determination as to ownership was not necessary in order to dismiss the Notoros' claim in the first action. Indeed our review of Judge FLICK'S opinion convinces us that he took pains to avoid deciding the issue of ownership. It is our opinion that Judge FLICK resolved the dispute on the narrow grounds that regardless of who was the lawful owner of the property, the Notoros did not adduce sufficient evidence to establish that retention of the rents by Dr. Hyer and his estate constituted fraud. As can best be surmised from his opinion, Judge FLICK apparently felt that Dr. Hyer would not *treat* the property as his own (this is not to say he in fact *acquired* ownership of the property) without the consent of the Elston heirs.[4]

Indeed, Judge FLICK'S opinion seems to suggest that he was more inclined to decide ownership in favor of the Notoros. In the concluding paragraph of his opinion Judge FLICK observes that:

"On the equitable side, Claimants have obtained a house which they did not intend to buy and did not know they were buying. As to the law, a fraud by Dr. Hyer upon the heirs of Cornelius Elston has not been shown by clear and convincing evidence and it has not been shown that a claim existed in favor of the heirs and against Dr. Hyer to be passed on to the Claimants by the quitclaim deed to them. Therefore the claim must be dismissed and the Court makes the following decree: ..."

In view of the overall tenor of Judge FLICK'S opinion, we cannot clearly determine that he reached the ultimate and controlling question of ownership.

---

4.   Judge FLICK states that: "It is extremely unlikely that Dr. Hyer would commit such a fraud on the Elston heirs, who entrusted to him the management of their property in Clarendon and continue to commit such a fraud for many years." In referring to the testimony of the only Elston heir who appeared in court, Judge FLICK remarked that: "Certainly there is nothing in her testimony to prove that Dr. Hyer did not treat the property as his own without the consent of the Elston heirs."

In conclusion then, we believe justice would be better served in this instance by refraining from holding that ownership of the subject property has previously been adjudicated. In fairness to both parties we think the confusion engendered by the outcome of the first action can only be clarified by proceeding to a final determination in the present ejectment action.

The order of the lower court is reversed and the case is remanded for further proceedings.