Fern Barbara SHANNO and Luanne Law Sukenik, on behalf of themselves and all others similarly situated

v.

MAGEE INDUSTRIAL ENTERPRISES, INC., and James A. Magee, Individually and as President and director of Magee Industrial Enterprises, Inc.

Appeal of MAGEE INDUSTRIAL ENTERPRISES, INC. and James A. Magee.

Appeal of Fern Barbara SHANNO and Luanne Law Sukenik.

Nos. 87–1680, 87–1707.

United States Court of Appeals, Third Circuit.

Argued June 2, 1988.

Decided Sept. 8, 1988.

Eugene A. Spector (argued), John F. Innelli, Eugene A. Spector & Associates, Philadelphia, Pa., for appellants, Magee Indus. Enterprises, Inc. and James A. Magee.

Robert C. Heim (argued), Melvin A. Schwarz, Linda J. Wharton, Dechert Price & Rhoads, Philadelphia, Pa., for appellants, Fern Barbara Shanno and Luanne Law Sukenik.

Leroy S. Zimmerman, Atty. Gen., Carl Vaccaro, Deputy Atty. Gen., Philadelphia, Pa., Joan Dawley Maher, Pennsylvania Securities Com'n, Harrisburg, Pa., for amicus curiae, Com. of Pa.

Before SEITZ, SLOVITER and HUTCHINSON, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

### I.

### *Introduction*

This appeal and cross-appeal arise out of litigation over a close corporation's tender offer to minority shareholders. Following a jury trial, the district court denied plaintiffs' motion for a judgment n.o.v. on the jury's determination of share value and granted plaintiffs a new trial on the question of share value. The parties agree that if we affirm the district court's decisions in these respects, a stipulation that they reached will obviate any need to consider the other issues presented on appeal, including the district court's ruling on the unconstitutionality of the Pennsylvania Takeover Disclosure Law and the court's instructions on the securities claims.

### II.

### *Background*

When the chain of events leading to this suit began in August, 1977, eighty-five percent of the stock of Magee Carpet Company (MCC), a closely held corporation, was held by Magee Industrial Enterprises (MIE). Both entities were Pennsylvania corporations. James Magee (Magee) was president and a director of both corporations, which were controlled by the Magee family. Most of the remaining shares had been issued to employees or past employees of MCC. (MIE, MCC and Magee shall be collectively referred to as the defendants.)

On August 29, 1977, Magee wrote a letter to shareholders who had previously expressed a desire to sell their stock announcing MIE's offer to purchase the outstand-

ing common stock at $20 per share. Shares were to be tendered by September 30. Magee included no written financial information with his letter, but offered "to arrange to make financial information concerning Magee Carpet Company available to you and to meet with you to answer your questions concerning the company at the offices of the company" in Bloomsburg, Pa.App. at 76. A similar offer dated September 29, with an October 30 deadline, was extended to all other stockholders. The plaintiffs represent a certified class of minority shareholders who tendered shares in response to these offers.

Plaintiffs' claim was that defendants failed to disclose to the minority shareholders that they initiated the tender offer with a settled intention to merge MCC into MIE and with full knowledge that the price offered to the minority shareholders was considerably lower than the true value of the shares. Plaintiffs' evidence included the testimony of defendants' accountant and attorney that merger and/or liquidation were discussed by Magee both before the first tender offer and thereafter at a meeting on September 29, 1977; the admission of defendants' chief financial officer that MCC had recently sold $6 million in assets which added approximately $3 million to the company's cash reserves, a transaction that was not disclosed to the minority stockholders; and the same witness' further testimony, corroborated by its expert, that after several years of significant losses the company had achieved a modest return to profitability. Plaintiffs also introduced letters in which Magee told minority shareholders who inquired about the possibility of merger that "there is nothing to be acquired," App. at 81, and that "[f]rom a business standpoint there is no advantage to us [i.e., the defendants] to buy this stock," App. at 82.

Defendants portrayed their offer as an altruistic gesture towards old friends of the company who had no market for their shares and no prospect of a dividend. They pointed to Magee's numerous expressions of concern for the outside shareholders, and to the fact that MIE spent $860,000 buying stock expecting no more than $135,-

000 in direct tax savings and a one-time, one year deferral of $600,000 in taxes. Although defendants did not dispute that merger and/or liquidation was discussed in various contexts before and during the tender period, Magee and his attorney testified that no decision was made to merge until late November, 1977. Magee testified that he tried hard to keep the business going to preserve jobs in the community and because he was too young to retire.

MIE's offer was successful. By the end of October, 1977, MIE had acquired approximately 97% of the outside shares. Sometime before the end of November the companies made a "final" decision to merge. The merger was formally announced on November 20, 1978, a year later, and became effective in December of that year.

### III.

#### Procedural History

Plaintiffs' complaint, filed in June, 1979, alleged violations of the Securities Exchange Act of 1934, the Pennsylvania Securities Act, and the Pennsylvania Takeover Disclosure Law, 70 Pa.Stat.Ann. §§ 71–85 (Purdon Supp.1988), as well as breach of fiduciary duty under state law. During the course of pre-trial proceedings, the district court ruled that the Pennsylvania Takeover Disclosure Law was unconstitutional because it imposed an impermissible burden on interstate commerce, and the court dismissed the count seeking recovery under that law.

The case was tried before a jury on the securities claims and the breach of fiduciary duty claim. The parties presented opposing expert witnesses on the value of MCC shares. Plaintiff's witness testified that although the official book value was approximately $55, the corrected book value was $58.89, and the fair market value was $42.72. Defendants' expert testified that the liquidation value of each share was approximately $20 per share below book, or $36; that the investment value (price/earning value) was between $12.60 and $17.33; and that, to the degree that market experience was relevant in a close corporation,

the "market value" was $10. It was the witness' opinion, based on these different valuations, that $20 was a fair price for the shares tendered. There was also evidence that in late October, 1977 the defendants' accountant had estimated the value of the shares as $31.

The jury was given special interrogatories. The first question asked was, "During the course of the offer to purchase the minority shares for $20 each in the summer and fall of 1977, did the defendants either knowingly or recklessly fail to disclose material information; that is, information bearing upon the fairness of the price offered, which a reasonable investor would take into account in deciding whether or not to sell at that price?" App. at 498. The jury answered "No" as to the named plaintiffs and as to the unnamed class members. This response represented the jury's verdict for defendants on the plaintiffs' securities acts claims. However, because the defendants as majority shareholders owed a fiduciary duty to their minority shareholders, *Weisbecker v. Hosiery Patents, Inc.*, 356 Pa. 244, 250–51, 51 A.2d 811, 813–14 (1947), they were obliged to tender the fair market value price for the minority held stock. *See Restatement of Restitution* § 138 (1937). Therefore, the jury was then obliged to find what the fair market value of MCC stock was during the tender period. The district court, *sua sponte*, instructed the jury to respond as to value on several dates during the tender period. The jury found that the fair market value of the stock was $20 on August 29 and September 29, 1977, the dates when the tender offers were made, that it was $23 per share on October 29, 1977, and that on November 29 and thereafter it was worth $31 per share.[1]

Based on these answers, both parties moved for judgment in their favor. In September of 1984, the district court entered judgment for the defendants on the state and federal securities counts, and for the plaintiffs on the fiduciary duty claim in the amount of $3 per share sold between October 29 and November 29, and $11 per share sold thereafter.

Plaintiffs filed a motion for judgment n.o.v. or for a new trial. The district court declined to disturb the jury's rejection of plaintiffs' claims under federal and state securities laws but granted a new trial confined to the issue of the proper value of MCC stock during the pendency of the tender offer. The court ruled that the jury's finding that MCC stock was worth $31 as of November 29, 1977 was adequately supported by the evidence. However, based on evidence that there was a distinct likelihood that the merger would take place and that the only conceivable alternative to a merger would have been a liquidation which would have produced $36.50 per share, the court held that the jury's finding of a value less than $31 per share during the tender period was against the weight of the evidence.

The parties, wishing to appeal, stipulated that judgment be entered fixing the value of the stock during the tender offer at $31. They did not agree that figure was correct, but entered the stipulation to "avoid a needless retrial of the case should, on appeal, the view of the trial court as to the right of the class to (at least) $31 per share be upheld." App. at 61.

The district court refused to adopt the stipulation as an order, but placed it in the record and fashioned its own judgment, finding "that the fair market value of each share of common stock of the Magee Carpet Company during the entire period of the tender offer and until November 29, 1977, was $31 per share, and that each member of the plaintiff class ... is entitled to receive damages at the rate of $11 per share, plus interest." App. at 57. The court stated that "neither party is waiving ... its appellate rights with respect to this court's earlier denial of plaintiff's motion

---

1. Although the record contains no explanation for the district court's selection of these dates, we note that August 29 was the date of the original tender offer, that September 29 was the date of the second tender offer and the last day before the expiration of the first offer, that October 29 was the last day before the expiration of the second tender offer, and that November 29 was a date by which it was undisputed that a decision to merge had been reached.

for judgment n.o.v., and its earlier grant of a partial new trial, or any other appealable issue in the case." App. at 57. This judgment was entered on October 2, 1987, and both sides appealed.[2]

## IV.

### *The Value of the Shares*

The jury was instructed that a stockholder with a controlling interest has a fiduciary duty to pay the "full and fair market value" of stock purchased from minority shareholders. App. at 465–66. The court understood that the jury's finding that the share value at various times in the relevant period was higher than the $20 that MIE paid encompassed a finding that defendants had breached their fiduciary duty to the minority shareholders and that the damages were the price differential between the amount paid and the value of the stock. The parties do not argue otherwise. Given the defendants' undisputed liability, the principal issue in this appeal is whether the jury correctly valued the stock under state law.

### A.

### *Plaintiffs' Motion for Judgment N.O.V.*

Plaintiffs allege error in the district court's failure to enter judgment notwithstanding the verdict for plaintiffs in the amount of $16.35 per share on their fiduciary duty claim. Plaintiffs contend that because the defendants had the discretion to liquidate MCC at any time in the relevant period, the only appropriate measure of share value, as a matter of law, was the liquidation value, which the defendants' expert testified was $36.35.

■■■ We reject plaintiffs' argument because there is no Pennsylvania case law supporting the proposition that a controlling shareholder's raw power to liquidate at will makes liquidation value the only true

reflection of a share's worth. The two cases plaintiffs cite do not stand for the proposition for which they were proffered.

Liquidation value may well be the appropriate valuation measure when there has effectively been a dissolution of the company, as was the case in *Petry v. Harwood Electric Co.*, 280 Pa. 142, 124 A. 302 (1924), on which plaintiffs rely. Had liquidation been imminent, the factfinder could have relied on asset value for the appraisal of the minority's shares. *Cf. In Re Jones & Laughlin Steel Corp.*, 328 Pa.Super. 442, 477 A.2d 527 (1984) (upholding exclusive use of asset value where likelihood of merger rendered it the most appropriate measure). But where, as here, the defendants' intention to liquidate was a disputed fact issue, no Pennsylvania case requires the factfinder to look solely at liquidation value in appraising the minority's shares.

Under Pennsylvania decisions governing valuation for purposes of appraisal, the trier of fact may use three principal methods: "net asset value," which, unlike the liquidation value used in this case, includes intangibles such as good will and going concern value; "investment value," equivalent to what the district court denominated as "earnings power"; and "market value." All three look to the value of the company as a "going concern." *See In re O'Connor*, 452 Pa. 287, 291–92 & n. 7, 304 A.2d 694, 697–98 & n. 7 (1973). *See generally* 12B W. Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* §§ 5906.-12–.15 (1984). It is not asserted here that the district court erred in its identification of the valuation methods to be used in this case.

The district court instructed the jury, without objection from either side, that it could look to three different measures of share value, the market price of the shares, the earning power of the stock, and the liquidation value.[3] The jury was also told

---

**2.** The district court's order of October 2, 1987, is in fact and by its terms "final, and determines all issues involved in this litigation." App. at 57. It is consequently appealable under 28 U.S.C. § 1291 (1982).

**3.** We note that under Pennsylvania law, the fair value of a corporation's shares is an issue for the trier of fact and is reviewed only to determine whether it is "supported by competent and substantial evidence." *In re* Watt and Shand, 444 Pa. 206, 209, 283 A.2d 279, 280 (1971);

that the reliance it placed on any particular method of valuation was to depend on the jury's view of the circumstances. Of liquidation value, the court said:

> [N]o shareholder has the right to say that because my share ... would be worth X dollars if you liquidated the corporation, ... you must liquidate and pay me off.... So that you can't translate liquidation value into per-share value, but you can, in a given situation, depending on how you analyze the evidence and exact circumstances, you can have a corporation in which the disadvantages of continuing in business ... and the advantages of liquidation are so pronounced that it would be reasonable to suppose that the corporation would be liquidated and the proceeds divided, and in that situation it is permissible to pay greater attention to the so-called liquidation value of the corporation.

App. at 462–63.

Because we see no legal error in the court's instruction, and because the trier of fact has considerable freedom under state law to select the method or methods of valuation appropriate in the particular case, *see, e.g., In re Jones & Laughlin Steel Corp.*, 328 Pa.Super. 442, 457–58, 477 A.2d 527, 534–35 (1984); *In re Spang Indus.* 369 Pa.Super. 133, 139, 535 A.2d 86, 89 (1987), we consider next whether, looking at the evidence in the light most favorable to defendants, "the record is critically deficient of that minimum quantum of evidence from which the jury might reasonably afford relief." *Patzig v. O'Neil*, 577 F.2d 841, 846 (3d Cir.1978).

In deciding that there had been no fraud or concealment of material facts, the jury necessarily concluded that defendants did not make the tender offer to accumulate shares in anticipation of a certain liquidation. Furthermore, there was evidence that defendants had stopped the decline of MCC and even brought it back to profitability. Magee testified he wanted to keep the business going. It cannot therefore be said that the jury's decision not to award plaintiffs the liquidation value was so un-

supported by the record as to justify entry of judgment n.o.v., and the district court did not err in denying plaintiffs' motion.

## B.

### *Plaintiffs Motion for a New Trial*

▮ The defendants' appeal challenges the district court's decision to order a partial new trial confined to the issue of share value. The decision to grant or deny a new trial is "confided almost entirely to the ... discretion ... of the trial court," *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36, 101 S.Ct. 188, 191, 66 L.Ed.2d 193 (1980). Where the new trial has been granted on the basis of a jury verdict against the weight of the evidence, the reviewing court must ensure that the trial court has not simply substituted its judgment of the facts and the credibility of the witnesses for those of the jury, *Lind v. Schenley Indus.* 278 F.2d 79, 90 (3d Cir.) (in banc), *cert. denied*, 364 U.S. 835, 81 S.Ct. 58, 5 L.Ed.2d 60 (1960); in other words, the new trial must be necessary to avoid a miscarriage of justice, *see Roebuck v. Drexel Univ.*, 852 F.2d 715, 735 (3d Cir. 1988); *Fireman's Fund Ins. Co. v. Aalco Wrecking Co.*, 466 F.2d 179, 187 (8th Cir. 1972), *cert. denied*, 410 U.S. 930, 93 S.Ct. 1371, 35 L.Ed.2d 592 (1973).

We review the trial court's grant of a new trial for abuse of discretion. *Link v. Mercedes–Benz of North America*, 788 F.2d 918, 921 (3d Cir.1986); *American Bearing Co. v. Litton Indus.* 729 F.2d 943, 948 (3d Cir.), *cert. denied*, 469 U.S. 854, 105 S.Ct. 178, 83 L.Ed.2d 112 (1984), *Lind*, 278 F.2d at 88. The statement of Judge Hastie, dissenting in *Lind*, that it will not be said that a district court has abused its discretion if there is "any basis in reason for [its] conclusions as to the weight of the evidence and the injustice of the verdict," *Lind*, 278 F.2d at 91, has been accepted by other commentators as well, *see, e.g., Crane v. Consol. Rail Corp.*, 731 F.2d 1042, 1047–48 (2d Cir.) (analyzing *Lind* ), *cert. denied*, 469 U.S. 854, 105 S.Ct. 179, 83 L.Ed.2d 114 (1984). *See generally* 6A J.

*accord In re* Spang Indus., 369 Pa.Super. 133, 137, 535 A.2d 86, 88 (1987).

Moore, J. Lucas & G. Grotheer, *Moore's Federal Practice* ¶ 59.08[5], at 59–147 to 59–148, 59–151 to 59–160 (2d. ed. 1987).

The district court found that the jury's determination that the shares were each worth $31 on November 29, when the merger indisputably had been agreed upon, "was adequately supported by the evidence." App. at 48. The parties do not disagree. This was the dollar amount that defendants' own accountant had placed on the value of the assets, as reported in a memorandum between defendants' own counsel dated October 31, 1977.[4] The district court based its order granting a new trial on its conclusion that "[t]he jury's finding of a lesser value on various dates before November 29, 1977 ... is decidedly contrary to the overwhelming weight of the evidence." App. at 48–49.

The only relevant factor throughout the tender period that could have affected share value was defendants' consideration of the merger. The court reasoned that "regardless of whether any formal and definitive conclusion to that effect had been expressed, there was, throughout the tender period, a distinct likelihood that the merger would take place." App. at 49. Moreover, even had the jury determined that merger was not likely, "the only conceivable alternative would have been a liquidation," which would have produced an even higher share value. *Id.*

The defendants' principal argument is that the district court improperly substituted its own fact-finding and credibility determinations for those of the jury. They contend that the district court's conclusion that a merger or liquidation were real possibilities throughout the tender period is in conflict with the jury's finding that there had been no fraudulent concealment of plans to merge or liquidate. Defendants also argue that the district court's order disregarded the evidence supporting the jury's implicit finding that the circumstanc-

es of the company changed sufficiently between August and November to account for the different share prices. Defendants urge that the evidence shows that consideration of the merger increased in October, accounting for a $3 increase in share value, and that this was congruent with the jury's determination of an $11 increase in late November owing to the final decision to merge.[5]

Although we agree with defendants that the jury's finding signified its acceptance of defendants' position that they did not decide to merge until late November, we read the district court's ruling as embodying the conclusion that the evidence did not support the jury's finding of three significantly different values in the relevant three months. We agree.

The evidence at trial showed that MCC was a company emerging after several years of hard times in which losses had mounted and whole lines of business had ceased to be viable. Management was making an effort to shed loss-generating activities and to preserve its profitable auto-carpet line, but Magee himself testified that there was only a "fifty-fifty chance" of continuing MCC as an independent entity. Trial Transcript, October 12, 1983 at 108. More important, regardless of the proper characterization of the precise state of the firm's health in the fall of 1977, there was no evidence whatsoever of a *change* in that state between August 29 and the decision to merge. It would be inappropriate to speculate why the jury determined, in the face of no eventful change with respect to MCC by the end of October, to find that the value of the stock increased by $3 at that time. Because this was not an openly traded stock, and the uncontradicted evidence was that there was no market for the stock, the jury could not rationally have found that there was a market price that fluctuated based on buyers'

---

4. In light of this evidence, we find no basis for defendants' speculation that the district court's reliance on the accountant's figure was "an afterthought" to justify a factual error in its original new trial order. Appellants' Reply Brief at 47.

5. Defendants' contention that the district court abused its discretion simply because it "changed its mind" between the time it entered judgment on the jury's valuation and ordered a new trial is, of course, without merit.

assessment of an increased possibility of merger. Therefore, we cannot say the district court abused its discretion in concluding that the jury's determinations of fluctuating value during the tender period were against the weight of the evidence.

We need not reach the validity of the district court's finding that the full and fair price of the stock throughout the entire period was not less than $31 per share. It may be, as defendants argue, that a $20 value for the entire period until the merger was agreed upon would have been supported by the evidence. However, since a new trial was appropriate because of the jury's finding, unsupported by the evidence, of fluctuating values, we will affirm the district court's order granting a new trial.

## V.

### Conclusion

We have found no abuse of discretion in the district court's denial of plaintiffs' motion for judgment n.o.v. and the court's grant of a new trial. The parties agree that their stipulation signifies that this holding would result in an award of damages to the plaintiffs in the amount of $11 per share tendered at any time in the relevant period. Moreover, because plaintiffs would be entitled to no greater amount on their claims filed under the various securities laws or under the Pennsylvania Takeover Disclosure Law, there is no need for this court to reach the merits of the district court's ruling on these issues. We particularly note that we express no opinion on the district court's conclusion that the Pennsylvania Takeover Disclosure Act is unconstitutional.

Because the district court's order effectuates the stipulation, there is no need for a remand. We will therefore affirm the order of the district court.