611 A.2d 1322

**Joseph FARRELL**

v.

**LECHMANIK, INC., Thomas A. Williams and Richard Wesley and R.C. Legnini Company, Inc.**

**Appeal of R.C. LEGNINI COMPANY, INC.**

Superior Court of Pennsylvania.

Argued March 11, 1992.

Filed Aug. 19, 1992.

---

**4.** Appellant was never charged with the crime of attempted murder.

O. Daniel Ansa, Philadelphia, for appellant.

Alvin Freiberg, Philadelphia, for appellee Farrell.

Before WIEAND, TAMILIA and CERCONE, JJ.

WIEAND, Judge.

Joseph Farrell was injured in November, 1989, when a concrete wall collapsed on him. At the time of the accident, Farrell was employed as a carpenter by R.C. Legnini Company, Inc. (Legnini) and was doing work at the residence of Thomas Williams in Rosemont, Montgomery County. Because of his injuries, Farrell was unable to work and was paid workmen's compensation. His employment was abruptly terminated by Legnini on January 2, 1990. In April, 1990, Farrell filed an action for wrongful discharge against Legnini, which was settled on or about August 29, 1990.

Meanwhile, in May, 1990, Farrell commenced an action for his injuries against Williams, the owner of the home upon which the work was being done; Richard Wesley, the architect; and Lechmanik, Inc., an excavator who was working on the job pursuant to subcontract with Legnini. Wesley and Williams joined Legnini as an additional defendant in this action, alleging that Legnini had agreed to indemnify them for any damages which they might be required to pay to Farrell. Legnini filed an answer to these complaints and, as new matter, asserted a claim against Farrell for indemnification against any damages which it might be required to pay to Williams and/or Wesley. The basis for this claim was language contained in the release which had been executed in the wrongful discharge action by which Farrell agreed to "release and indemnify" Legnini

> from any and all actions and causes of action, claims and demands, suits, ... in law or in equity (hereinafter referred to collectively as "Claims"), now known or accrued which he or anyone claiming by, through or under him in any way has, might have or could have claimed against Legnini in a lawsuit captioned *Joseph Farrell v. R.C. Legnini Company, Inc.*, filed in the Court of Common Pleas, Chester County, No. 90–02736 [wrongful discharge suit], said lawsuit to be dismissed with prejudice, and all other Claims against Legnini arising from Farrell's employment by Legnini, including Claims which could be

asserted by third parties as a result of Claims asserted by Farrell.

To the claim thus made, Farrell filed preliminary objections in the nature of a demurrer. The agreement of release and indemnity, he argued, had contemplated only the wrongful discharge action and did not pertain to his action for personal injury or to any agreements of indemnity which Legnini may have executed in favor of Williams or Wesley. The trial court agreed and, by order dated April 8, 1991, dismissed Legnini's claim against Farrell. Legnini appealed.

■ As a general rule, releases encompass only such matters as may fairly be said to have been within the contemplation of the parties when the release was given. In *Sparler v. Fireman's Ins. Co. of Newark, N.J.*, 360 Pa.Super. 597, 521 A.2d 433 (1987), the Superior Court said:

Written releases are construed according to the rules governing the construction of contracts generally. 76 C.J.S. Release § 38 (1952). A release normally covers only such matters as can fairly be said to have been within the contemplation of the parties when the release was given. *Estate of Bodnar*, 472 Pa. 383, 387, 372 A.2d 746, 748 (1977); *In re Jones & Laughlin Steel Corp.*, 328 Pa.Super. 442, 456–457, 477 A.2d 527, 534 (1984); *Gateway Center Corp. v. Merriam*, 290 Pa.Super. 419, 425, 434 A.2d 823, 826 (1981). The intention of the parties to a written release is paramount, and in construing a release, a court should adopt an interpretation which, under all the circumstances, "ascribes the most reasonable, probable and natural conduct of the parties, bearing in mind the objects manifestly to be accomplished." *General Mills, Inc. v. Snavely*, 203 Pa.Super. 162, 168, 199 A.2d 540, 543 (1964). See: *Unit Vending Corp. v. Lacas*, 410 Pa. 614, 617, 190 A.2d 298, 300 (1963); *Village Beer and Beverage, Inc. v. Vernon D. Cox and Co.*, 327 Pa.Super. 99, 107, 475 A.2d 117, 121 (1984). Although a court will not relieve the parties of the effect of an improvident contract, it must not allow a "rigid literalness" to be used to create an improvident contract for the parties contrary

> to their intent. *Mowry v. McWherter,* 365 Pa. 232, 238, 74 A.2d 154, 158 (1950). Thus, the words of a release "should not be construed to extend beyond the express consideration mentioned so as to make a release for the parties which they never intended or contemplated." *Brill's Estate,* 337 Pa. 525, 527, 12 A.2d 50, 52 (1940). See: *Furtek v. West Deer Township,* 19 Pa.D. & C.2d 169, 178, aff'd, 191 Pa.Super. 405, 156 A.2d 581, 585 (1959).

*Id.,* 360 Pa.Super. at 601, 521 A.2d at 434–435. There, the plaintiff had executed a general release in connection with the settlement of a claim for personal injuries against the driver of the vehicle which had collided with him. He made a subsequent claim against his own insurance carrier for underinsured motorist benefits provided for by his contract of insurance. The carrier asserted in defense the release which the plaintiff had executed in favor of the third party tortfeasor. Therefore, a subsequent declaratory judgment proceeding was brought to determine whether the terms of the release barred an action for underinsured motorist benefits. The Superior Court held that the claim was not barred by the release. Observing that the claim for under-insured motorist benefits was a separate claim based on contract, the Court reasoned that "[to] interpret the release as discharging Fireman's alleged contractual obligations, under [the] circumstances, would be to insert a benefit for which no separate consideration [had been] paid and which [did] not appear to have been within the contemplation of the parties." *Id.,* 360 Pa.Superior Ct. at 602, 521 A.2d at 435.

■ The reasoning of *Sparler* is equally applicable to the agreement of release and indemnity executed by Farrell in the instant case. Farrell's wrongful discharge action had sought to enforce a claim which was entirely different than the claim for personal injuries, which was based on the negligence of a third party tortfeasor.

To imply from the release in the wrongful discharge action an agreement by Farrell to indemnify Legnini against a potential liability which Legnini had assumed by

contracts of indemnity with third persons would be wholly unreasonable. It would be to insert a benefit for which no separate consideration had been paid and which did not appear to be within the contemplation of the parties.

Appellant argues, however, that Farrell's agreement to indemnify against all other claims made "against Legnini arising from Farrell's employment by Legnini, including claims which could be asserted by third persons as a result of claims asserted by Farrell" is unambiguous and supports the claim asserted in Legnini's pleading. We disagree. The claims made against Legnini by Williams and Wesley do not arise by virtue of Farrell's employment by Legnini but only because of separate agreements which Legnini may have executed with such third persons.

For these reasons, the trial court correctly held that Legnini, the additional defendant, had failed as a matter of law to state a cause of action against Farrell, the plaintiff, for indemnification against liability, if any, which Legnini had assumed by agreements with two of the defendants. The order sustaining preliminary objections in the nature of a demurrer to Legnini's claim against Farrell, therefore, must be affirmed.

Order affirmed.

CERCONE, J., files a dissenting opinion.

CERCONE, Judge, dissenting.

I must respectfully dissent from the majority's compelling analysis of the pertinent release language in this case. I am constrained to find that the language used in the release between appellant Legnini and appellee Farrell is not so clear as to require affirmance of the trial court's grant of preliminary objections.

The majority establishes the pertinent law in this area with precision. It is also true, however, that the effect of a release must be determined from its language. The ordinary meaning must be attributed to the language, unless a different meaning was clearly intended. *Vogel v. Berkley,*

354 Pa.Super. 291, 297, 511 A.2d 878 (1986) (citing *Wenger v. Ziegler*, 424 Pa. 268, 226 A.2d 653 (1967)). With this in mind, I find that the release language used in this case is susceptible to varying constructions and a jury should decide what the parties intended by the release.

It is well established that a contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. *Hutchison v. Sunbeam Coal Corp.*, 513 Pa. 192, 201, 519 A.2d 385, 389 (1986). In this case, I find two different constructions of the release language. One construction is that which the majority has propounded—that the release only applies to any claims arising from the wrongful discharge suit. I find, however, that the release is also subject to the construction which appellant contends (i.e., appellee agreed to indemnify appellant for all claims arising from his *employment*). This position is bolstered by express language used in the release which otherwise would not have been included. First, had the parties wished to limit the release to claims resulting from the wrongful discharge, they could have used language which restricted its scope. *Cf. Vogel v. Berkley, supra* (release agreement which discharged all claims arising from "above-described dispute" was unambiguous).

This writer is also mindful that the words of the release should not be construed to extend beyond the express consideration mentioned so as to make a release for the parties which they never intended or contemplated. *Sparler v. Fireman's Insurance Company of Newark, N.J.*, 360 Pa.Super. 597, 601, 521 A.2d 433, 435 (1987) (*en banc*), *allocatur denied*, 518 Pa. 613, 540 A.2d 535 (1988). However, the limitation of the release to claims arising from the wrongful discharge becomes a *non sequiter* in the face of the additional language which requires appellee to release and indemnify "[c]laims which could be asserted by third parties as a result of Claims asserted by Farrell." I find it difficult to envision claims appellee could assert against third parties arising in the context of a wrongful discharge

action. Such suits naturally involve only the master and servant. Moreover, I am unable to accept the majority view, which states:

"[t]o imply from the release in the wrongful discharge action an agreement by Farrell to indemnify against a potential liability which Legnini had assumed by contracts of indemnity with third persons would be wholly unreasonable. It would be to insert a benefit for which no separate consideration had been paid and which did not appear to be within the contemplation of the parties."

Majority opinion at 176–177. There is no indication in the record of this case of what consideration was paid in order to secure the settlement agreement and the contemporaneously executed release. Moreover, the majority overly concerns itself with the release between Legnini and the other defendants, rather than with the release at issue.

Finally, I must note that the settlement agreement and negotiation were entered into while the separate negligence suit was pending. It is quite plausible that appellant sought to insulate itself from further liability to Farrell as appellant had already settled with him.

Because the language of the release is conflicting, I would find the release sufficiently ambiguous to require a trial to ascertain the parties' intent. *Hutchison v. Sunbeam Coal Corp.*, 513 Pa. at 201, 519 A.2d at 390. I would therefore reverse the order of the trial court sustaining appellee's preliminary objections.