J-S79031-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE:  ESTATE OF JANET MORANE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF:  JAY A. MORANE | : | No. 1633 EDA 2017 |

Appeal from the Order Entered April 24, 2017
In the Court of Common Pleas of Lehigh County
Orphans' Court at No(s):  2010-0668

BEFORE:  GANTMAN, P.J., LAZARUS, J., and OTT, J.

MEMORANDUM BY GANTMAN, P.J.:                **FILED DECEMBER 20, 2017**

Appellant, Jay A. Morane, appeals from the order entered in the Lehigh County Court of Common Pleas Orphans' court, which denied his petition for a citation to show cause why Appellee, Stacy L. Morane ("Executrix"), should not file an accounting of the Estate of Janet Morane, Decedent.  We affirm.

In its opinion, the Orphans' court fully and correctly sets forth the relevant facts and procedural history.  Therefore, we have no need to restate them.  We add Appellant filed a "Petition for Citation To Show Cause Why An Account Should Not Be Filed In Accordance With Section 3501.1 Of The PEF Code" on September 1, 2016.  On April 24, 2017, the court denied Appellant's petition.  Appellant timely filed a notice of appeal on May 24, 2017.  The Orphans' court did not order Appellant to file a concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b), and Appellant filed none.

Appellant raises one issue for our review:

WHETHER THE [ORPHANS'] COURT ERRED IN DENYING THE "PETITION FOR CITATION TO SHOW CAUSE WHY AN ACCOUNT SHOULD NOT BE FILED" WITHOUT A HEARING OR ACCOUNT?

(Appellant's Brief at 4).

Our standard and scope of review are as follows:

Our standard of review of the findings of an [O]rphans' court is deferential.

When reviewing a decree entered by the Orphans' [c]ourt, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the Orphans' [c]ourt sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion.

However, we are not constrained to give the same deference to any resulting legal conclusions.

[T]he Orphans' court decision will not be reversed unless there has been an abuse of discretion or a fundamental error in applying the correct principles of law.

*In re Estate of Whitley*, 50 A.3d 203, 206-07 (Pa.Super. 2012), *appeal denied*, 620 Pa. 724, 69 A.3d 603 (2013) (internal citations and quotation marks omitted).

[T]he Orphans' [c]ourt is a court of equity, [which means] that in the exercise of its limited jurisdiction conferred entirely by statute, it applies the rules and principles of equity.

*In re Adoption of R.A.B.*, 153 A.3d 332, 334-35 (Pa.Super. 2016).

When examining the terms of a contract, "the language of the instrument should be interpreted in the light of the subject matter, the

- 2 -

apparent object or purpose of the parties and the conditions existing when it was executed." *Hart v. Arnold*, 884 A.2d 316, 333 (Pa.Super. 2005), *appeal denied*, 587 Pa. 695, 897 A.2d 458 (2006). "[T]he intent of the parties to a written contract is contained in the writing itself. When the words of a contract are clear and unambiguous, the meaning of the contract is ascertained from the contents alone." *Chen v. Chen*, 586 Pa. 297, 307, 893 A.2d 87, 93 (2006). "If left undefined, the words of a contract are to be given their ordinary meaning." *Kripp v. Kripp*, 578 Pa. 82, 90, 849 A.2d 1159, 1163 (2004). Further, the court does not consider the disputed language in isolation, but will examine that language in the context of the entire instrument. *Murphy v. Duquesne University Of The Holy Ghost*, 565 Pa. 571, 591, 777 A.2d 418, 429 (2001).

The scope of a release "must be determined from the ordinary meaning of its language" and where releases "involve clear and unambiguous terms, the court need only examine the writing itself to give effect to the parties' understanding." *Seasor v. Covington*, 670 A.2d 157, 159 (Pa.Super. 1996), *appeal denied*, 546 Pa. 647, 683 A.2d 884 (1996). In certain cases, however, it is necessary to look beyond the plain meaning of the release. *Vaughn v. Didizian*, 648 A.2d 38 (Pa.Super. 1994). "Although a court will not relieve the parties of the effect of an improvident contract, it must not allow a 'rigid literalness' to be used to create an improvident contract for the parties contrary to their intent." *Farrell v.*

*Lechmanik, Inc.*, 611 A.2d 1322, 1323 (Pa.Super. 1992). Therefore, a court may also discern intent from the conditions and circumstances surrounding the execution of the release. *Vaughn*, *supra* at 40. Additionally, contracting parties are generally bound to their agreement "without regard to whether the terms were read and fully understood and irrespective of whether the agreements embodied reasonable or good bargains." *Crispo v. Crispo*, 909 A.2d 308, 313 (Pa.Super. 2006).

Section 3521 of the Probate, Estates and Fiduciaries ("PEF") Code provides as follows:

> ### § 3521. Rehearing; relief granted
>
> If any party in interest shall, within five years after the final confirmation of any account of a personal representative, file a petition to review any part of the account or of an auditor's report, or of the adjudication, or of any decree of distribution, setting forth specifically alleged errors therein, the court shall give such relief as equity and justice shall require: Provided, That no such review shall impose liability on the personal representative as to any property which was distributed by him in accordance with a decree of court before the filing of the petition. The court or master considering the petition may include in his adjudication or report, findings of fact and of law as to the entire controversy, in pursuance of which a final order may be made.

20 Pa.C.S.A. § 3521.

Nevertheless, "equity courts may not rely solely on statutes of limitation in determining if a claim is timely." *United Nat. Ins. Co. v. J.H. France Refractories Co.*, 542 Pa. 432, 441, 668 A.2d 120, 125 (1995). "[F]or an action in equity, the applicable statute of limitations is used only as

a frame of reference to evaluate any purported delay in support of a claim of laches." **Lipschutz v. Lipschutz**, 571 A.2d 1046, 1051 (Pa.Super. 1990), *appeal denied*, 527 Pa. 601, 589 A.2d 692 (1990). "The doctrine of laches is an equitable bar to the prosecution of stale claims and is the practical application of the maxim[:] those who sleep on their rights must awaken to the consequence that they have disappeared." **Fulton v. Fulton**, 106 A.3d 127, 131 (Pa.Super. 2014) (internal quotation marks omitted). "The question of whether laches applies is a question of law; thus, we are not bound by the trial court's decision on the issue." **Id.**

> Laches bars relief when the complaining party is guilty of want of due diligence in failing to promptly institute the action to the prejudice of another. Thus, in order to prevail on an assertion of laches, respondents must establish: a) a delay arising from petitioner's failure to exercise due diligence; and, b) prejudice to the respondents resulting from the delay.

**Id.** (quoting **In re Estate of Scharlach**, 809 A.2d 376, 382-83 (Pa.Super. 2002)). "The question of laches itself, however, is factual…and is determined by examining the circumstances of each case." **Fulton, supra** at 131. Laches arises when a party's position or rights "are so prejudiced by length of time and inexcusable delay, plus attendant facts and circumstances, that it would be an injustice to permit presently the assertion of a claim against him." **Nilon Bros. Enterprises v. Lucente**, 461 A.2d 1312, 1314 (Pa.Super. 1983).

> Unlike the application of the statute of limitations, exercise of the doctrine of laches does not depend on a mechanical

passage of time. Indeed, the doctrine of laches may bar a suit in equity where a comparable suit at law would not be barred by an analogous statute of limitations. Moreover,

> [t]he party asserting laches as a defense must present evidence demonstrating prejudice from the lapse of time. Such evidence may include establishing that a witness has died or become unavailable, that substantiating records were lost or destroyed, or that the defendant has changed his position in anticipation that the opposing party has waived his claims.

**Fulton, supra** at 131 (internal citations omitted). "In the absence of prejudice to the one asserting laches, the doctrine will not be applied." **Brodt v. Brown**, 404 Pa. 391, 394, 172 A.2d 152, 154 (1961).

"Equitable estoppel is a doctrine whereby a party will be bound by [its] representations if they are justifiably relied upon by another party." **Northcraft v. Edward C. Michener Associates, Inc.**, 466 A.2d 620, 626 (Pa.Super. 1983). "Equitable estoppel arises when a party by acts or representation intentionally or through culpable negligence, induces another to believe that certain facts exist and the other justifiably relies and acts upon such belief, so that the latter will be prejudiced if the former is permitted to deny the existence of such facts." **Id.**

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable J. Brian Johnson, we conclude Appellant's issue on appeal merits no relief. The Orphans' court comprehensively discusses and properly disposes of the question presented. (**See** Orphans' Court Opinion, filed, June 5, 2017, at 5-

- 6 -

7) (finding: equity does not warrant hearing on Appellant's petition nor require Executrix to file formal accounting of estate administration that parties agreed was completed over four years ago; Appellant failed to set forth in his petition those errors Appellant could not have discovered when he signed Receipt, Release and Refunding Agreement ("Agreement"); each error or omission in Executrix's administration of estate, that Appellant alleged in his petition constitutes fraud, was discernible upon review of record when parties signed Agreement; if Appellant disagreed with Executrix's administration of Decedent's estate, Appellant could and should have declined to sign Agreement until his concerns were addressed and/or demanded Orphans' court audit; that Appellant failed to seek advice of counsel before he signed Agreement does not mean Executrix fraudulently induced Appellant to sign Agreement; further, Appellant's misunderstanding or failure to recognize legal significance of information that Executrix provided to Appellant when he signed Agreement does not mean Executrix fraudulently induced Appellant to sign Agreement; Appellant is bound by his prior approval of informal accounting of estate and discharge of Executrix through Agreement). The record supports the court's rationale, and we discern no reason to disturb it. Accordingly, we affirm on the basis of the Orphans' court's opinion.

Order affirmed.

Judge Lazarus joins this memorandum.
Judge Ott concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/20/2017

**IN THE COURT OF COMMON PLEAS OF LEHIGH COUNTY, PENNSYLVANIA**
**ORPHANS' COURT DIVISION**

In re: Estate of              :
        **JANET L. MORANE,**     :     **File No. 2010-0668**
           **Deceased**         :

**<u>SECOND AMENDED</u>**
**<u>MEMORANDUM OPINION</u>**

**J. Brian Johnson, A.J.**

Before the Court for consideration is the *Petition For Citation To Show Cause Why An Account Should Not Be Filed In Accordance With Section 3501.1 Of The PEF Code,* filed by Jay A. Morane on September 1, 2016 (hereinafter "Petition") and the *Answer Of Stacy L. Morane, Executrix Of The Estate Of Janet L. Morane, Deceased To Petition Of Jay A. Morane For Citation,* filed on October 26, 2016. Briefs were filed on January 13, 2017 and argument was held on January 27, 2017.

Janet L. Morane (hereinafter "Decedent"), aged 80, died testate on April 12, 2010. Her will dated September 18, 2009 was accepted for probate on April 19, 2010 and letters testamentary were issued to Stacy L. Morane (hereinafter "Executrix"). Stacy L. Morane, individually (hereinafter, "Stacy") and her brother, Jay A. Morane, (hereinafter "Petitioner"), are each fifty percent (50%) residuary legatees. The Executrix was represented by Linda Luther-Veno, Esquire during the estate administration. Petitioner is reported to have been represented by counsel at various times during the estate administration.

On April 26, 2010, the Executrix filed the required Certification of Notice Under Pa. O.C. Rule 5.6(a), reporting that each of the testate heirs, including Petitioner, had been served with notice of their beneficial interest in the Estate of Janet L. Morane. On May 6, 2010, during the Pennsylvania Inheritance Tax discount period, the Executrix made a payment on account of said inheritance tax and, on January 14, 2011, filed a Pennsylvania Inheritance Tax Return. On March 17, 2011, the Pennsylvania Department of Revenue issued a refund of inheritance tax. On May 22, 2012, the Executrix filed a Status Report with the Lehigh County Register of Wills which indicated that the estate administration was not complete because she was awaiting approval "...from one of the heirs." On August 14, 2012, Executrix filed an informal account of the estate administration stated for the period April 12, 2010 through December 31, 2011 to which was attached a Receipt, Release and Refunding Agreement signed by both residuary legatees (hereafter "Receipt and Release") that included each legatee's acknowledgment of receipt of a $280,086.83 cash distribution in satisfaction of each of their fifty percent (50%) interests in the residue of Decedent's estate. On September 13, 2012, the Executrix filed a final Status Report with the Lehigh County Register of Wills which reflected that the estate administration had been completed by informal account.

Settlement of an estate administration "informally" by means of an accounting to the beneficiaries that is not audited or confirmed by the Court, but is accepted as sufficient by the beneficiaries, is a well-established procedure whereby beneficiaries choose to accept distribution from the Executrix in return for waiving their right to raise any questions about the estate administration in the future. The Receipt and Release signed by Stacy on April 18, 2012 and by Petitioner on April 27, 2012 is fairly typical and provides, in pertinent part, as follows:

2

WHEREAS, the Residuary Beneficiaries desire that the residue of the estate be distributed to them without the formality of a court account; and

WHEREAS, Stacy L. Morane, Executor of the Estate of JANET MORANE, Deceased, is willing to consent to distribution upon receipt of a proper Receipt, Release and Refunding Agreement.

NOW, THERFORE, the Residuary Beneficiaries hereby approve the account of the administration of said estate which is attached. The Residuary Beneficiaries do hereby acknowledge that they have received from Stacy L. Morane, Executor of the Estate of JANET MORANE, Deceased, the assets itemized on the schedule attached.

The Residuary Beneficiaries, for themselves, their heirs, executors, administrators, successors and assigns, do by these presents remise, release, quitclaim and forever discharge said Stacy L. Morane, Executor of the Estate of JANET MORANE, Deceased, of and from all liability for the retention of said assets during the period of estate administration and for the distribution of said assets in cash and in kind.

The Residuary Beneficiaries, for themselves, their heirs, executors, administrators, successors and assigns, do by these presents, remise, release, quitclaim and forever discharge said Stacy L. Morane, Executor of the Estate of JANET MORANE, Deceased, of and from all bequests and distributions due them, and all other matters during the period of administration of the estate and of and from all actions, suits, payments, accounts, reckonings, claims and demands whatsoever for or by reason thereof; or of any other act, matter, cause or thing whatsoever. The Residuary Beneficiaries further agree to indemnify and hold harmless said Stacy L. Morane, Executor of the Estate of JANET MORANE, Deceased, from and against any and all claims, losses, liabilities, including costs of [sic.] counsel fees, which she may suffer or to which she may be subjected as a result of said distribution and to refund to the estate such portion of any amount received by them which may be necessary in the future to discharge any liabilities and/or claims against the estate of which notice may hereafter be received. The provisions of this release are applicable to any and all losses, liabilities, including claims resulting from any cause whatsoever, including any resulting from mistake of law or fact by the said Executor.

3

Petitioner filed the subject petition on September 1, 2016, more than four (4) years after the Executrix filed an informal account with the Receipt and Release appended, filed a final Status Report and made distribution to all beneficiaries. Petitioner contends that the Petition is neither untimely nor barred by his prior approval of the estate administration and discharge of the personal representative by his execution of the Receipt and Release because, "In the intervening years [he] reviewed a number of aspects of the Estate...and [a]s he did so, he found a number of the documents filed by the Executrix to have material omissions...[and]...came to believe that the Executrix either exaggerated or falsely reported the work she performed in order to enhance her fees from the estate." (Brief of Petitioner at p. 1). It is Petitioner's contention that, because the Petition contains allegations of "...a pattern of material misstatements, omissions or questionable charges in significant dollar amounts" by the Executrix, "...this Court should fully entertain the issue of fraud and conduct a hearing." (Brief of Petitioner at p. 5). He further maintains that, if he successfully establishes fraudulent inducement, the Court can and should require the Executrix to file a formal account and permit him to file objections and seek to surcharge her.

For the reasons set forth below, we find that the Petition does not contain averments of fraud sufficient to entitle Petitioner to a hearing regarding the circumstances surrounding his execution of the Receipt and Release in August of 2012 and that his having executed the Receipt and Release precludes him from demanding that the Executrix file a formal account four (4) years after final distribution of the estate.

Petitioner contends that his execution of the Receipt and Release approving the Executrix's informal account is analogous to the Court having issued an Adjudication confirming

4

a formally filed fiduciary account. He then argues that, because Section 3521 of the PEF Code permits a party in interest, within five (5) years after the final confirmation of a formal account, "...to file a petition to review any part of the account...adjudication, or any decree of distribution, setting forth specifically alleged errors therein, [and request] such relief as equity and justice shall require...," the Petition should not be considered untimely filed. We are persuaded that PEF Code Section 3521 is analogous enough to be instructive and that the Petition is not time-barred. However, we find that the Petition fails to set forth "... specifically alleged errors" that could not have been discovered by Petitioner four (4) years ago by the exercise of reasonable diligence.

It is well settled that:

> ...a review after confirmation and distribution of an account of the fiduciary is not a matter of right but is a matter of grace or discretion with the orphans' court. It is mandatory from the wording of the act "that the courts shall give such relief as equity and justice shall require." From the numerous cases it is apparent that the purpose of [predecessor to section 3521 of the PEF Code] is to correct errors on the face of the record, to permit the introduction of new matter which has arisen after the decree, or, to permit a reconsideration of the decree of distribution upon discovery of proofs which could not have been obtained before the entry of the decree. Branyan Est., 12 Fiduc. Rep. 518; Kocis Estate, 16 Fiduc. Rep. 540, 542 (O.C. Somerset, 1966).

We find that equity and justice do not require that Petitioner be afforded a hearing on the circumstances surrounding his execution of the Receipt and Release or that the Executrix be required to file a formal account of this estate administration that was completed more than four (4) years ago. Accordingly, we do not reach the question of whether or not Petitioner would be permitted to seek a surcharge of the Executrix were she to be required to file a formal account. (See 20 Pa.C.S.A §3521 which provides that, if a review of a formally filed account or

5

adjudication is permitted, "...no such review shall impose liability on the personal representative as to any property which was distributed by him in accordance with a decree of court before the filing of the petition.")

Each of the errors or omissions alleged in the Petition as constituting fraud are matters that were discernable by careful review of the pleadings filed of record. Because Petitioner did not seek or did not receive or did not heed advice and counsel from a competent Orphans' Court lawyer before signing the Receipt and Release does not mean that the Executrix fraudulently induced him to sign it. For example, the fact that an annuity from which he received a death benefit was not included in the Inheritance Tax Return is obvious from review of the return. Whether or not that particular non-probate asset was subject to inheritance tax and should have been included in the return is a question that could have been posed to his lawyer, or raised with the Executrix at the time that the return was filed. Similarly, it was clear from review of the Inventory and Schedule G of the Inheritance Tax Return that the Executrix reported the two (2) bank accounts titled in the names of the decedent and Stacy as power of attorney as tenancy in common and not as convenience accounts or joint accounts with right of survivorship. If Petitioner was in disagreement with the Executrix's treatment of these two (2) assets, or did not understand the different types of joint ownership, he could have and should have: declined to sign the Receipt and Release until his questions and concerns were addressed to his satisfaction; and/or demanded that the Executrix file her account formally for audit by this Court. The same is true with regard to Petitioner's several allegations of insufficient and/or inaccurate reporting of assets, disbursements and/or distributions in the informal account; specifically:

6

1. The calculation and payment of legal fees and fiduciary commissions that he now "…believes are either excessive, unjustified, or both.";

2. The lack of an income schedule in the informal account;

3. The failure of the informal account to reflect the sale of the decedent's real property or to distinguish between cash and in-kind distributions.

In sum, we find that the fact that information may have been omitted from or incorrectly or incompletely reported in the informal account was readily discernable at the time that the informal account and accompanying Receipt or Release were presented to Petitioner in 2012. "The effect of a Release is determined by the ordinary meaning of its language…Further, a misjudgment by the signer of the release as to the precise nature and extent of injury will not permit rescission of a release agreement when the release contains broad language." Holmes v. Lankenau Hospital et.al., 627 A.2d 763, 767 (Pa. Super. 1993). That Petitioner may not have fully understood or recognized the legal significance of the information provided to him by the Executrix when he chose to sign the Receipt and Release, does not mean that he was fraudulently induced to do so. "If a mistake is not mutual but unilateral and is not due to the fault of the party not mistaken, but due to the negligence of the one who acted under the mistake, it affords no basis for relief in rescinding the Contract/Release." Smith v. Thomas Jefferson University Hospital, 621 A.2d 1030, 1032 (Pa. Super. 1993). Petitioner is bound by his prior approval of the informal account and discharge of the Executrix, despite the fact that he now considers it to have been unwise.

Dated: June 5, 2017

J. Brian Johnson, A.J.

7