## Barcola v. Hourigan, Kluger & Quinn P.C.

C.P. of Lackawanna County, nos. 02 CV 338, 03 CV 2329.

*Daniel L. Thistle,* for plaintiffs.
*Jeffrey B. McCarron,* for defendant.

NEALON, *J.,* December 29, 2006—Plaintiffs have instituted this legal malpractice action against their for-

mer counsel who unsuccessfully litigated a medical malpractice claim on their behalf and allege that counsel allowed the statute of limitations governing their related products liability claim to expire while counsel pursued the medical malpractice suit. Plaintiffs have served requests for admissions in this legal malpractice action seeking to have their former counsel admit the nature and extent of the male plaintiff's injuries as well as the resulting economic and non-economic damages, based upon assertions and statements that were made by former counsel in the medical malpractice case filings and submissions. Since counsel did not personally vouch for the truthfulness and accuracy of the representations and arguments made on behalf of the plaintiffs in zealously advocating their medical negligence claim, counsel is not estopped from contending in this legal malpractice suit that the male plaintiff was not injured as alleged. Rather, the plaintiffs must satisfy their burden of proving "the case within the case" in this legal malpractice proceeding by establishing the alleged injuries and damages by expert medical testimony and other competent evidence.

## I. FACTUAL BACKGROUND

On March 12, 1997, plaintiff Robert Barcola was allegedly injured while working as a carpenter at a construction site when a fellow employee accidentally bumped into Barcola with a pneumatic nail gun causing it to discharge a barbed nail into his right buttock. Barcola was transported to the Community Medical Center (CMC) where he was treated by William J. Dempsey M.D., who extracted the bent nail from Barcola's buttock. Barcola reportedly developed a severe sciatic nerve in-

jury which allegedly causes constant, unrelieved pain and has rendered him fully disabled and unable to work as a carpenter. (Docket entry no. 4 in 04 CV 2329, ¶¶4-6.)

On April 14, 1998, Barcola retained the law firm of Hourigan, Kluger & Quinn P.C. (HK&Q) and executed two contingent fee agreements. Barcola and HK&Q signed a "Medical Negligence Contingent Fee Contract Involving Forwarding Counsel" with respect to a possible malpractice claim against Dr. Dempsey and CMC. (*Id.*, exhibit B.) In addition, the parties jointly executed a separate "Complex Litigation Contingent Fee Contract" concerning a potential products liability claim against the pneumatic nail gun manufacturer, Bostitch, a Division of Techtronics Inc. (*Id.*, exhibit A.)

On July 2, 1998, HK&Q commenced a malpractice suit on behalf of Barcola against Dr. Dempsey and CMC. (See docket entry no. 1 in no. 98 CV 3150.) No products liability action was filed against Bostitch within two years of Barcola's injury on March 12, 1997. Barcola contends that when the malpractice case was called for trial in April 2001, substitute counsel from HK&Q tried the case rather than the HK&Q attorney "who had handled the case all along and to [Barcola's] knowledge was the attorney who was supposed to try the case." (Docket entry nos. 4 and 11, ¶21 in no. 03 CV 2329.) On May 1, 2001, the jury in the medical negligence case found that Dr. Dempsey and CMC were not negligent and thereby rendered a defense verdict in that matter. (Docket entry no. 66 in no. 98 CV 3150.)

Following the malpractice verdict, Barcola met with members of HK&Q and was apparently advised that HK&Q would send Barcola's file to a Texas attorney

who was experienced in nail gun litigation. (Docket entry nos. 4 and 11, ¶22 in no. 03 CV 2329.) On September 11, 2001, J. Gregory Marks, Esquire, of Irving, Texas forwarded correspondence to HK&Q which read:

"Thank you for the opportunity to review the potential case of *Barcola v. Bostitch.* Unfortunately, due to the statute of limitations problem, I have decided not to take on this case. Therefore, I am enclosing the documents that you have previously provided me.

"Please keep me in mind for any other nail gun cases that you may have in the future. These cases can be very lucrative if given the right circumstances." (Docket entry no. 12, exhibit A in no. 03 CV 338.) On September 14, 2001, HK&Q transmitted a letter to Barcola referencing a telephone conversation "with Mr. Gregory Marks on Thursday, September 6, 2001" and stating that "[a]fter a lengthy review of your case, Mr. Marks has declined to take on representation." (*Id.,* exhibit B.) HK&Q subsequently forwarded another letter to Barcola on September 20, 2001 indicating that "[b]ecause Mr. Marks has declined to take on representation of your products liability case, we are at this time closing our file." (*Id.*)

Barcola maintains that he contacted Attorney Marks to inquire "why he was not interested in the products liability case" and was advised "by Mr. Marks that he thought there was an excellent products liability case but that [HK&Q] had done nothing to preserve the statute of limitations and, therefore, the lawsuit was barred." (Docket entry no. 4, ¶26 in no. 03 CV 2329.) According to Barcola, "[t]his was the first time that [Barcola] had learned that the case could not be brought because [HK&Q] failed to file an action on his behalf in the

products liability case." (*Id.*) Barcola also asserts that when HK&Q first referred his products liability claim to Attorney Marks, HK&Q recommended "that he file the action in Mississippi because Mississippi had a six-year statute of limitations." (*Id.*, ¶27.) Barcola avers, however, that "[t]he Mississippi legislature changed the statute of limitations from six years to three years in the early 1990s." (*Id.*)

On January 21, 2003, Barcola instituted this legal malpractice action against HK&Q.[1] Barcola avers that the nail gun was defectively manufactured without a protective device that would have prevented it from firing on contact while the trigger was depressed. (*Id.*, no. 4.) In Count I of the complaint, Barcola alleges that HK&Q was negligent for failing: (a) to properly investigate his product liability claim; (b) to ascertain and preserve evidence in support of that claim; and (c) to timely file a civil action against the pneumatic nail gun manufacturer within the two-year statute of limitations. (No. 03 CV 2329, docket entry no. 4, ¶¶34-35.) Barcola advances a breach of contract claim in Count II of the complaint and asserts that HK&Q did not comply with the "withdrawal of counsel" provisions contained in its own contingency fee agreement by advising Barcola that

---

1. Since the suit filed on January 21, 2003 named "Hourigan, Kluger & Quinn" as the defendant, (see no. 03 CV 338, docket entry no. 1), Barcola filed a second action on June 5, 2003 identifying the professional corporation "Hourigan, Kluger & Quinn P.C." as the defendant. (See no. 03 CV 2329, docket entry no. 1.) By order dated November 25, 2003, Judge Trish Corbett allowed Barcola to amend the caption in no. 03 CV 338 "to change the designation of the defendant law firm from Hourigan, Kluger & Quinn to Hourigan, Kluger & Quinn P.C." (No. 03 CV 338, docket entry no. 12.) For ease of reference, we will refer to the named defendant as HK&Q.

HK&Q was "not going to file an action within the applicable statute of limitations" or was otherwise "withdrawing from the products liability action." (*Id.*, ¶¶40-42.) HK&Q denies Barcola's claims and avers in its new matter that, inter alia, Barcola is collaterally estopped from "asserting a contention or establishing a fact which is different from a contention or fact which [Barcola] agreed existed or which [Barcola] asserted in other proceedings in which [Barcola] . . . was a party." (*Id.*, no. 11, ¶¶69-70.)

During the course of discovery, Barcola served 12 requests for admissions upon HK&Q pursuant to Pa.R.C.P. 4014, and HK&Q served its responses and objections to those initial requests on August 16, 2006. In request for admission no. 1, Barcola seeks HK&Q's stipulation that on March 12, 1997, Barcola "was shot in the mid-line of the right buttock with a 2 1/2 inch barbed nail fired by a Bostitch pneumatic nail gun." Although HK&Q has admitted in its answer "that a nail penetrated the right buttock" of Barcola on March 12, 1997, it maintains that it is without sufficient information "to allow [HK&Q] to admit or deny the source of the nail." (Docket entry no. 19 in no. 03 CV 2329, exhibit D, p. 2.)

Requests for admissions nos. 2-4 seek HK&Q's admission that Barcola suffered disabling and permanent injuries "as a result of being struck in the right buttock by the 2 1/2 inch barbed nail fired by a Bostitch pneumatic nail gun . . . ." (*Id.*, pp. 2-3.) HK&Q has denied the requested admissions and further avers that Barcola did not suffer the severe and permanent injuries identified in the requests. (*Id.*) Barcola's requests for admissions nos. 5 through 10 solicit HK&Q's admissions that Barcola

has sustained and will continue to suffer certain economic and non-economic damages. In its response, HK&Q affirmatively denies that Barcola has sustained or will suffer the described harm. (*Id.*, pp. 4-5.)

Barcola's requests for admissions nos. 11 and 12 reference the life care plan of Robert Voogt and the economic report of Andrew Verzilli Ph.D., who were retained as expert witnesses by HK&Q in the malpractice litigation against Dr. Dempsey and CMC. Barcola requests admissions that Mr. Voogt's report "accurately sets forth the medical expenses and required medical care which resulted from Robert Barcola's nail gun injury" and that Dr. Verzilli's report "accurately sets forth Robert Barcola's loss of earnings and earning power as a result of the injury sustained in the nail gun injury." (*Id.*, p. 5.) HK&Q has replied by denying that the medical services identified in Mr. Voogt's report "were for Robert Barcola's nail injury, or were reasonable and necessary." (*Id.*) As for Dr. Verzilli's report, HK&Q states that it "did not accurately set forth loss of earning and earning power sustained by Robert Barcola." (*Id.*, p. 6.)

Barcola subsequently served a supplemental set of requests for admissions which attach discovery responses and expert reports that were submitted by HK&Q in conjunction with the medical malpractice action. Supplemental request no. 1 asks HK&Q to admit that the answers to interrogatories that it filed in *Barcola v. Dempsey/ CMC* "were true, accurate and honest answers." (Docket entry no. 19, exhibit E, p. 1.) HK&Q has answered that request by stating that the answers to interrogatories 3, 12, 13, 15, 16, 18 and 19 are true. As for the answers to interrogatories 2, 4, 5, 7, 9(f), 10 and 11, HK&Q merely admits that those discovery responses "correctly

state the contention of [Barcola] in the underlying medical malpractice action." HK&Q apparently has not expressly admitted or denied Barcola's request with regard to the answers to interrogatories 1, 6, 8, 14 and 17. HK&Q further states in its response to supplemental request for admission no. 1 that Barcola "is able to work" and "is not disabled due to the alleged injury." (*Id.,* pp. 1-2.)

Barcola's supplemental requests for admissions nos. 2, 3 and 4 seek admissions by HK&Q that the pretrial reports of Dr. Richard Paul Bonfiglio, Keystone Rehabilitation Inc., and Albert D. Janerich M.D., are "true and accurate." HK&Q has replied to those requests by admitting only that the attached documents are true and correct copies of the designated reports. HK&Q additionally responds that "[i]f the request relates to all the information in the report, then this request is unreasonably burdensome, oppressive, compound and not a permissible use of a request for admission." (*Id.,* pp. 2-3.)

On September 6, 2006, Barcola filed a motion seeking to compel HK&Q to admit the foregoing requests for admissions "without qualification." Barcola submits that requests for admissions nos. 1-10 are verbatim recitations of allegations made by HK&Q in its medical malpractice suit filings whereas requests for admissions nos. 11-12 and supplemental requests for admissions nos. 1 through 6 are predicated upon the reports of experts retained by HK&Q in that matter. Barcola posits that "[h]aving represented to this court in a prior proceeding that the reports of [HK&Q's] selected medical experts . . . , vocational experts, life care experts and answers to interrogatories were true and accurate, [HK&Q] cannot now in this proceeding deny that they were." (Docket entry no. 19,

¶¶14-16.) Barcola bases his argument upon Pa.R.C.P. 1023.1 and Rule 3.3 of the Rules of Professional Conduct.

HK&Q opposes Barcola's motion to compel and argues that there "is no basis under Pennsylvania law for [Barcola's] contention that, because an attorney advocated a particular position on behalf of his client based on certain evidence, he is precluded from advocating a different position based on competing evidence in a subsequent legal malpractice action brought against him by the client." (No. 03 CV 338, docket entry no. 25, p. 1.) Citing *Siebert v. Nusbaum,* 167 F.3d 166 (3d Cir. 1999) (applying New Jersey law), HK&Q maintains that it is not "barred by estoppel and waiver principles from taking a position different from that taken in the underlying [malpractice] litigation." (*Id.,* no. 29, p. 2.) Noting that Barcola must establish that he would have prevailed in a products liability suit in order to recover damages in this legal malpractice action, HK&Q submits that Barcola is seeking to circumvent his "burden to establish the 'case within the case' by attempting to bind [HK&Q] to contentions or positions asserted on behalf of [Barcola] in the underlying [malpractice] action." (*Id.,* no. 25, p. 4.)

## II. DISCUSSION

### (A) *Standard of Review*

Under Pa.R.C.P. 4014(a), a party may serve upon another party a written request for the admission "of the truth of any matters within the scope of Rules 4003.1 through 4003.5 . . . that relate to statements or opinions

of fact or of the application of law to fact, including the genuineness, authenticity, correctness, . . . or receipt of any document described in the request." The purpose of this discovery tool is "to clarify and simplify the issues raised in prior pleadings in order to expedite the litigation process." *Christian v. Pennsylvania Financial Responsibility Assigned Claims Plan,* 454 Pa. Super. 512, 521, 686 A.2d 1, 5 (1996), *appeal denied,* 548 Pa. 678, 699 A.2d 733 (1997). Requests for admissions must relate to factual matters since conclusions of law are not within the permissible scope of requests under Rule 4014. *Brindley v. Woodland Village Restaurant Inc.,* 438 Pa. Super. 385, 395-96, 652 A.2d 865, 870-72 (1995) (requests which sought admissions that attached medical records and bills reflected reasonable and necessary treatment for injuries caused by subject accident were improper since they called for legal conclusions); *Dwight v. Girard Medical Center,* 154 Pa. Commw. 326, 333, 623 A.2d 913, 916 (1993) (requested admission that adequate and proper medical treatment had been provided was not within permissible scope of requests for admissions.) Any facts admitted by a party in response to a request for admission are treated as judicial admissions for purposes of the pending proceeding. *Duquesne Light Company v. Woodland Hills School District,* 700 A.2d 1038, 1054 (Pa. Commw. 1997), *appeal denied,* 555 Pa. 722, 724 A.2d 936 (1998). The party who served the requests for admissions may move to determine the sufficiency of an adversary's answers, and "[i]f the court determines that an answer does not comply with the requirement of [Rule 4014], it may order either that the matter is admitted or that an amended answer be served." Pa.R.C.P. 4014(c).

## (B) *Legal Malpractice Burden of Proof*

In order to establish a claim of legal malpractice against a civil litigator, the aggrieved client must demonstrate: (1) employment of the attorney or other basis for a duty; (2) the failure of the attorney to exercise ordinary skill and knowledge; and (3) that such negligence was the proximate cause of damage to the former client.[2] *Kituskie v. Corbman,* 552 Pa. 275, 281, 714 A.2d 1027, 1029-30 (1998); *Nelson v. Heslin,* 806 A.2d 873, 876 (Pa. Super. 2002), *appeal denied,* 574 Pa. 761, 831 A.2d 600 (2003). A lawyer may assume an implied duty to represent or advise a client regarding collateral matters, but can avoid the imposition of such unintended duties by adequately advising the client in writing that the representation will be confined to specific matters. See *Jones v. Bresset,* 47 D.&C.4th 60, 70-73 (Lacka. Cty. 2000) (dismissing legal malpractice action where client had hired attorney solely for purposes of securing an accounting in bankruptcy action and attorney had advised client in writing that his representation would not include investigation or pursuit of potential malpractice claim against prior counsel). See also, Maloy, *Proximate Cause: The Final Defense in Legal Malpractice Cases,*

---

2. A former client who wishes to pursue a civil action for damages against a criminal defense attorney must establish: (1) employment of the attorney; (2) reckless or wanton disregard of the accused's interests on the part of the attorney; (3) that the attorney's culpable conduct was the proximate cause of the harm, *i.e.,* "but for" the attorney's actions, the accused would have obtained an acquittal or a complete dismissal of the charges; (4) as a result of that harm, the accused has suffered damages; and (5) the accused has pursued post-trial remedies and obtained relief which was dependent upon attorney error. *Bailey v. Tucker,* 533 Pa. 237, 250-51, 621 A.2d 108, 115 (1993); *Woolaver v. Farrell,* 100 Lacka. Jur. 48, 51-52 (1998).

36 Univ. Memphis L. Rev. 655, 663 n. 37 (spring 2006) (discussing *Bresset, supra*). As noted above, Barcola contends that HK&Q agreed in writing to investigate and prosecute a products liability claim on his behalf, but negligently allowed the statute of limitations to expire, thereby deviating from the applicable standard of care and breaching the relevant provisions of the parties' fee agreement.

An essential element to a cause of action for legal malpractice is proof of actual loss, as opposed to a breach of a professional duty causing only nominal damages, speculative harm or the threat of future harm. *Kituskie,* 552 Pa. at 281, 714 A.2d at 1030; *Rizzo v. Haines,* 520 Pa. 484, 504-505, 555 A.2d 58, 68 (1989); *Nelson, supra.* Therefore, to succeed with a legal malpractice claim, the plaintiff must prove that [s]he had a viable cause of action against the party [s]he wished to sue and that the attorney [s]he hired was negligent in prosecuting or defending that underlying case. *Poole v. W.C.A.B. (Warehouse Club Inc.),* 570 Pa. 495, 499-500, 810 A.2d 1182, 1184 (2002); *Nelson, supra.* In the context of a legal malpractice action, such proof of actual loss is often referred to as proving "the case within the case." *Poole,* 570 Pa. at 500, 810 A.2d at 1184; *Brubacher Excavating Inc. v. W.C.A.B. (Bridges),* 575 Pa. 168, 174 n.2, 835 A.2d 1273, 1277 n.2 (2003).

To successfully prove his "case within the case", Barcola must establish that: (1) the nail gun was defective; (2) the defect existed at the time that the nail gun left the hands of the manufacturer or seller; and (3) Barcola suffered damages as a result of the defect. See *Davis v. Berwind Corp.,* 547 Pa. 260, 267, 690 A.2d 186, 190 (1997); *Glodzik v. Whink Products Co.,* 61 D.&C.4th

241, 247 (Lacka. Cty. 2003). In his requests for admissions, Barcola seeks to use representations made by HK&Q in the medical malpractice filings and discovery to satisfy his burden of proving that he has suffered certain injuries and sustained particular losses as a result of the nail gun incident. Neither party has cited, nor has our independent research revealed, any Pennsylvania case law directly addressing the narrow issue of whether statements made by former counsel on behalf of a client in a prior proceeding are binding upon or admissible against that same lawyer in a subsequent legal malpractice action.

Barcola premises his motion to compel upon Rule 3.3(a) of the Rules of Professional Conduct, 42 Pa. C.S., and Pa.R.C.P. 1023.1(c)(3). Rule 3.3(a) requires an attorney to treat a tribunal with candor and prohibits counsel from knowingly making a false statement of material fact to a tribunal or offering evidence that the lawyer knows to be false. See Wilson, *Doctrinal Malfunction: Spoliation and Products Liability Law in Pennsylvania,* 69 Temp. L. Rev. 899, 924-25 (summer 1996.) Pa.R.C.P. 1023.1 is patterned after Fed.R.C.P. 11 and provides that an attorney's signature on a pleading, written motion or other paper which is directed to the court constitutes a certification "to the best of that person's knowledge, information and belief, formed under an inquiry reasonable under the circumstances," that the factual allegations contained therein have evidentiary support. Pa.R.C.P. 1023.1(c)(3). See also, *McNeil v. Jordan,* 586 Pa. 413, 445 n.25, 894 A.2d 1260, 1279 n.25 (2006).

However, lawyers also have an "overriding duty of zealous representation of a client's interest", *Reese v. Danforth,* 486 Pa. 479, 485, 406 A.2d 735, 738 (1979),

and "an obligation to put their clients' interests ahead of their own." *In re Cendant Corporation Securities Litigation,* 404 F.3d 173, 186 (3d Cir. 2005). The explanatory comment to Rule 3.1 of the Rules of Professional Conduct states that attorneys have "a duty to use legal procedure for the fullest benefit of the client's cause" and the corresponding responsibility to "make good faith arguments in support of their clients' positions." See Weston, *Court-Ordered Sanctions of Attorneys: A Concept that Duplicates the Role of Attorney Disciplinary Procedures,* 94 Dick. L. Rev. 897, 923 (summer 1990). That same comment further provides that an attorney's arguments and actions in that regard are not frivolous or devoid of good faith "even though the lawyer believes that the client's position ultimately will not prevail." See *G. C. Murphy Company v. M. Goldfarb-My Florist Inc.,* 11 D.&C.4th 614, 623 (Alleg. Cty. 1991). Cf. *Talamini v. Allstate Insurance Company,* 470 U. S. 1067, 1071 n.11 (1985).

The explanatory comment to Rule 3.3 of the Rules of Professional Conduct similarly states that "[a] lawyer acting as an advocate in an adjudicative proceeding has an obligation to present the client's case with persuasive force." In advocating the client's case, the attorney must often rely upon assertions made by the client with respect to contested liability and damages issues. As the comment to Rule 3.3 recognizes, "litigation documents ordinarily present assertions by the client, or by someone on the client's behalf, and not assertions by the lawyer."[3] R.P.C.

---

3. The comment also acknowledges, however, that "an assertion purporting to be on the lawyer's own knowledge, as in an affidavit by the lawyer or in a statement in open court, may properly be made only when the lawyer knows the assertion is true or believes it to be true on

3.3, explanatory comment. Thus, although Rule 3.3 imposes a duty of candor upon counsel, the explanatory comment distinctly notes that counsel is not required "to vouch for the evidence submitted in a cause . . . ." *Id.* Furthermore, since "[t]he prohibition against offering false evidence only applies if the lawyer knows that the evidence is false," "[a] lawyer's reasonable belief that evidence is false does not preclude its presentation to the trier of fact." *Id.* Hence, while a lawyer must make a reasonable pre-filing inquiry before signing a court filing and may not knowingly make a false representation to the court, counsel does not customarily guarantee the veracity of assertions made on behalf of the client.

For example, in *Norris v. Lee,* 1994 WL 143119 (E.D. Pa. 1994), counsel for the plaintiffs sought to withdraw representation on the grounds that counsel had "lost some faith in the full veracity and validity of their clients' cause, and [we]re concerned that there may have been some possible tinkering with the truth." In denying the motion to withdraw, the federal district court cited the comment to Rule 3.3 and remarked:

"As professional trial lawyers, hired courtroom gladiators, they cannot always expect to be favored with the heartwarming luxury of knowing for a fact that their clients are the ones in the right. They simply get hired to

---

the basis of a reasonably diligent inquiry." *Id.* Barcola's motion to compel is based upon the medical malpractice pleadings which were verified by Barcola rather than HK&Q, the pretrial memorandum and discovery responses submitted by HK&Q in that case, and the reports authored by damage experts retained by HK&Q in that matter. Barcola has not submitted any transcripts or affidavits containing factual assertions that were purportedly made by HK&Q based upon HK&Q's own knowledge. Compare *Office of Disciplinary Counsel v. Price,* 557 Pa. 166, 173-74, 732 A.2d 599, 603 (1999).

go into court and fight the good fight . . . . Lawyers serve not as judge or jury, but as stewards of their clients' cause, and as such, in our adversary system, they serve a vital purpose, giving litigants the process that is their due.

". . . That is the way the system works—and generally works well. The reality is that the professional advocate who gets too quickly squeamish at the thought of representing a less that utterly lustrous cause might wish to consider another line of work." *Id.* at *1.

Barcola's reliance upon Rule of Professional Conduct 3.3(a) and Pa.R.C.P. 1023.1(c)(3) is misplaced. The relevant disciplinary rules, accompanying comments and governing case law reflect that the zealous advocate's presentation of evidence and argument in support of the client's cause does not constitute a binding, personal attestation or verification of the truthfulness and accuracy of those assertions. In advancing the client's claims, an attorney is generally required to rely upon information provided by the client and others. See Pa.R.C.P. 1023.1, explanatory comment (noting that the reasonableness of counsel's pre-filing inquiry depends upon "whether the signer had to rely on a client for information as to the facts underlying the pleading, motion, or other paper . . . ."). By way of illustration, in connection with a limited tort claim, counsel and the client's treating physician may be compelled to rely upon the client's subjective complaints and symptoms in attempting to establish the existence of a "serious injury" under 75 Pa.C.S. §1705. See *Hames ex rel. Hames v. Philadelphia Housing Authority,* 737 A.2d 825, 829 (Pa. Commw. 1999) (stating that *Washington v. Baxter,* 553 Pa. 434, 719 A.2d 733 (1998) declined to adopt a standard "that objective medical evidence is required in order to cross the serious

injury threshold" in a limited tort case). According to Barcola's logic, if that attorney is later sued for negligently causing the client to lose that personal injury claim, counsel's good faith assertion of a "serious injury" in the limited tort case should be admissible against counsel in the legal malpractice suit. If statements and arguments made by counsel in furtherance of a client's claim were routinely deemed to constitute binding admissions against a lawyer in a subsequent legal malpractice action, it could conceivably have a chilling impact upon the vigor and resulting effectiveness of counsel's advocacy.

Although no Pennsylvania court has addressed this specific issue in a reported decision, the reasoning of the United States Court of Appeals for the Third Circuit in *Seibert* is instructive and persuasive. In that case, an automobile accident victim was denied underinsured motorist (UIM) benefits after his counsel settled his third-party liability claim against the tort-feasor without first securing the UIM carrier's written consent to settle in compliance with the UIM policy provisions. Not unlike Pennsylvania, New Jersey requires a plaintiff in a legal malpractice action to establish: "(1) the existence of an attorney-client relationship creating a duty of care upon the attorney; (2) breach of that duty; and (3) proximate causation of damages." *Seibert,* 167 F.3d at 168. Although the attorney in *Seibert* conceded that he was negligent in settling the tort claim without first complying with the consent to settle clause in the UIM policy, he asserted that the client did not suffer actual loss as a result. *Id.,* at 169. However, the New Jersey district court granted summary judgment in favor of the client and awarded damages. *Id.*

On appeal, the client argued that since his former counsel had pursued a claim for benefits against the UIM carrier, the attorney was precluded from maintaining in the legal malpractice case that the client could not recover UIM benefits under the policy. The Third Circuit disagreed with that argument and held:

"[W]e reject [the client's] contention that [counsel] is barred by estoppel and waiver principles, by reason of having brought the action against Travelers, from contending that Travelers' policy did not afford [the client] underinsured motorist coverage. Naturally, a plaintiff's attorney in filing an action takes the position that the action is justified. If the attorney through some error precludes the case from being litigated on the merits, then the concept of a trial within a trial is not consistent with estopping the attorney from contending that if he had not made an error in any event he could not have been successful." *Id.* at 172. See also, Nahigian, *Defense to Legal Malpractice Claims,* 2 J.Leg. Advoc. & Pract. 197, 201 (2000) (citing *Seibert* and stating that "[t]o preclude an attorney from asserting that pursuit of the legal remedy would have been ultimately unsuccessful would be inconsistent with the concept of a trial within a trial.").

Barcola's proffered use or admission of statements made by HK&Q in the medical malpractice filings and submissions would also contravene well-established evidentiary principles. In attempting to prove the viability of his products liability claim under "the case within the case" requirement, Barcola may only introduce that evidence which HK&Q could have offered in a products liability action. Since the cause of Barcola's alleged injury is beyond the knowledge or expertise of the average

layperson, HK&Q would have been obligated to present competent medical expert testimony establishing, to a reasonable degree of medical certainty, that Barcola's claimed injury was caused by the nail gun (as opposed to Dr. Dempsey's negligence.) See *e.g., Cauthorn v. Owens Corning Fiberglas Corp.,* 840 A.2d 1028, 1038-39 (Pa. Super. 2004); *Brown v. Herman,* 445 Pa. Super. 305, 312-14, 665 A.2d 504, 508 (1995), *aff'd,* 547 Pa. 352, 690 A.2d 232 (1997). Any statements made by HK&Q regarding the alleged permanency or effect of Barcola's injuries would not have been admissible in a hypothetical products liability suit litigated by HK&Q. See *Commonwealth v. Perillo,* 474 Pa. 63, 68, 376 A.2d 635, 638 (1977) (" . . . evidence comes from the mouths of witnesses and not from statements made by counsel . . . ."); *Commonwealth v. Joseph,* 848 A.2d 934, 941 (Pa. Super. 2004) (court properly "instructed the jurors that the lawyers' statements were not to be considered testimony or evidence . . . ."). Accord, Pa. SSJI (Civ.) 1.36 (3d ed. 2005) (admonishing jurors that opening statements and closing arguments by counsel are not evidence). Nor can they be admissible in the products liability "case within the case" which must be litigated by Barcola. For that evidentiary reason, Barcola may not use his requests for admissions to satisfy his burden of proving, through medical expert testimony, that his alleged injury was caused by the product at issue.

Finally, many of Barcola's requests for admissions seek binding stipulations that Barcola suffered disabling and permanent injuries as a result of the nail fired by a Bostitch pneumatic nail gun, and that Barcola sustained certain economic and non-economic losses as a result of those injuries. However, HK&Q's submissions in the

medical malpractice suit asserted that Barcola's injuries and damages were caused by the negligence of Dr. Dempsey and CMC, rather than the mere firing of the barbed nail from the pneumatic nail gun. Moreover, requested admissions of this nature relate to proximate causation issues and call for legal conclusions which are not appropriate matters for requests for admissions. See *Brindley, supra; Dwight, supra.*

Based on the foregoing, HK&Q's responses to Barcola's requests for admissions are sufficient under Rule 4014, and Barcola's motion to compel HK&Q to admit the requests for admissions without qualification will be denied. An appropriate order follows.

### ORDER

And now, December 29, 2006, upon consideration of "plaintiffs' motion to compel defendant Hourigan, Kluger & Quinn P.C. to admit requests for admissions," the memoranda of law submitted by the parties and the oral argument of counsel on October 23, 2006, and based upon the reasoning set forth in the foregoing memorandum, it is hereby ordered and decreed that "plaintiffs' motion to compel defendant Hourigan, Kluger & Quinn P.C. to admit requests for admissions" is denied.